763 P.2d 235

Kenneth John KOTT,
Plaintiff/Appellant,

v.

CITY OF PHOENIX, a municipal
corporation, Defendant/Appellee.

No. CV-87-0228-PR.

Supreme Court of Arizona.

Sept. 13, 1988.

Ely, Bettini & Ulman, by Herbert L. Ely and Eileen S. Willett, Phoenix, for plaintiff/appellant.

Roderick G. McDougall, Phoenix City Atty., by Donald P. Williams, Asst. City Atty., Phoenix, for defendant/appellee.

MOELLER, Justice.

## JURISDICTION

This is a personal injury action against the City of Phoenix. Plaintiff Kott, a motorcyclist involved in a one-vehicle accident, contended that the cause of the accident was the City's negligence in marking and maintaining the roadway. The City, on the other hand, attributed the accident to plaintiff's negligence, including inattentiveness.

The accident was investigated by one of the City's police officers. Over plaintiff's objection, the trial court permitted the officer to testify concerning his opinion on the issue of causation. The jury returned a defense verdict, the trial court denied plaintiff's motion for a new trial, and the court of appeals, by memorandum decision, affirmed. We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We reverse.

## FACTS AND PROCEDURAL BACKGROUND

At approximately 10:30 p.m., on May 25, 1983, plaintiff Kenneth John Kott was driving his motorcycle east on Bell Road in Phoenix. He intended to turn left from Bell Road onto 21st Avenue to drop some keys off for his employer on his way home from work. At the time of the accident Bell Road had two paved eastbound lanes and a center dirt lane that divided eastbound and westbound traffic. There was a raised median in part of the center dirt lane which channeled traffic wishing to turn left on 21st Avenue.

As he approached 21st Avenue, plaintiff changed from the outer paved lane to the inner paved lane, anticipating the upcoming left turn. According to plaintiff, he was going east in the inner paved lane when suddenly, without warning, he found himself on the unpaved portion of Bell Road. Realizing he was driving on dirt, he attempted to maneuver his motorcycle back into the paved lane. According to him, he hit a large hole in the dirt center lane and

lost control of his motorcycle, thereby sustaining his injuries.

In his suit, he contended that the City was negligent in the maintenance and construction of Bell Road by failing to provide adequate visible markings to delineate the left paved lane from the center dirt lane and in permitting a large hole to remain in the dirt lane. The City denied that it was negligent and contended that plaintiff's loss of control of his motorcycle was caused by his own inattentiveness and improper driving.

During the course of the litigation, plaintiff served non-uniform interrogatories upon the defendant, including the following:

8. Do you know of any person who is skilled in any particular field or science, whom you may call as a witness upon the trial of this action and who has expressed an opinion upon any issue of this action? _____. If so, state:

a) the name and address of each such person.

*    *    *    *    *    *

47. State the name, address and telephone number of any expert witness who may be called by the defense in the upcoming trial.

To these two questions, the City responded, respectively, "not at this time" and "unknown at this time." The City never supplemented these answers. In answer to another interrogatory, the City did list the investigating police officer, Eisentrat, as a witness, but not as an expert witness. Plaintiff also listed the officer as a potential witness, but never called him at trial. Plaintiff objected in the pretrial statement to the introduction of the officer's accident report insofar as it contained his opinions as to the cause of the accident. Plaintiff objected because he maintained that the officer was not qualified to render opinions as an expert. At trial, plaintiff submitted into evidence a portion of the officer's accident report with all opinions and conclusions excised from the report. Shortly prior to trial, plaintiff's counsel asked defendant's counsel whether the City intended to use the officer as an expert witness. It is undisputed that counsel for the City advised plaintiff's counsel that "he was not calling Officer Eisentrat as an expert witness and [he] would not testify as to expert opinion regarding causation."

At trial, the City put its investigating officer on the stand. After testimony concerning his observations and physical findings at the scene, the following occurred:

Q. [BY MR. WILLIAMS (counsel for defendant)]: Then after your examination, what conclusion, if any, did you come to as to the probable cause of this accident?

MR. ELY (plaintiff's counsel): Excuse me, your honor. Let me object to that. There's no foundation that he can testify. And, as I understood from counsel, this witness was not going to be an expert. He's testifying to his observations, your honor. I object to that.

MR. WILLIAMS: Yes, Your Honor. I think under Rule 701 of the Rules of Evidence pertaining to opinion testimony by lay witnesses, this witness would be able to give this kind of conclusion as part of his job.

MR. ELY: Absolutely not, Your Honor.

THE COURT: Was this disclosed in discovery?

MR. ELY: Not at all, Your Honor.

THE COURT: Was it sought in discovery?

MR. ELY: Yes, sir, Your Honor, absolutely, as to any expert witnesses.

THE COURT: That was asked?

MR. ELY: Yes, Your Honor, in the interrogatory.

MR. WILLIAMS: The report was disclosed, and he's had that, and that shows that.

I am not asking him as an expert witness. Only what conclusion he drew as the investigating officer.

MR. ELY: He can't do indirectly, Your Honor, what he can't do directly.

THE COURT: What is the question again?

MR. WILLIAMS: I asked him based upon his investigation of the accident

what conclusion did he arrive at as the probable cause of this accident.

THE COURT: I will overrule the objection.

BY MR. WILLIAMS:

Q. Go ahead and answer.

A. The cause of the accident I believe or the—made the conclusion that it was striking that curb caused him to lose control of the motorcycle.

MR. WILLIAMS: I have no further questions.

Following a defense verdict, plaintiff moved for a new trial. The principal ground urged was the allegedly erroneous admission of the officer's opinion testimony. The trial court denied the motion for new trial and plaintiff appealed.

Division Two of the Court of Appeals correctly noted that the record did not show the basis upon which the trial court overruled plaintiff's objection to the opinion testimony. It concluded that the trial court may have been proceeding on any one of three theories: (1) that there was sufficient foundation to permit an expert opinion, Rules 702 and 704, Arizona Rules of Evidence, 17A A.R.S.; (2) that plaintiff had sufficient notice of Eisentrat's opinion; or (3) that the trial court might have believed the opinion testimony to be admissible even if the officer was not an "expert," because it was a proper conclusion drawn from the officer's observations and helpful to the jury, even if he was not qualified as an expert. Rules 701 and 704, Arizona Rules of Evidence, 17A A.R.S.

Without deciding whether any of these possibilities was legally correct, the court of appeals affirmed on the basis that the error, if any, was harmless. The court of appeals' reasoning was as follows:

Kott (plaintiff) argued the accident was caused by the City's negligent construction and maintenance of the street—specifically, inadequate lighting, striping and signing, which caused Kott to leave the paved portion of the roadway. The City's defense was that Kott was inattentive, and his inattention caused him to leave the paved portion. Therefore, Eisentrat's statement that it was striking the curb after leaving the pavement that caused Kott to lose control of the motorcycle is not relevant to either party's theory of the case because the location or condition of the curb was not an issue on liability, and was, therefore, harmless.

We granted review.

## QUESTION PRESENTED

Should the trial court have sustained plaintiff's objection to the investigating officer's opinion testimony on causation?

## WAS THE CITY'S INTENDED USE OF THE OPINION TESTIMONY TIMELY DISCLOSED?

Clearly, the City's answers to plaintiff's interrogatories Nos. 8 and 47 provided plaintiff with no clue that the City would seek to use the officer's opinion testimony on causation. The City never supplemented these answers prior to trial. Rule 26(e)(1)(B), Arizona Rules of Civil Procedure, provides:

A party is under a duty seasonably to supplement the response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify and the substance of the person's testimony....

Rule 26(e) goes on to provide when the required supplementation must be made in a given case and then provides:

Any witness not identified in accordance with this Rule shall not be permitted to testify except for good cause shown or upon written agreement of the parties. Rule 26(e)(1)(C).

Defendant argues that the officer's testimony is not "expert testimony" but is, instead, opinion testimony of a lay witness under Rule 701, Rules of Evidence. Defendant advances this argument in the hope that its acceptance would obviate plaintiff's objection based on lack of disclosure because the officer was disclosed as a lay witness. Without regard to how the opinion testimony is properly characterized,

however, we reject defendant's argument. First, Interrogatory No. 8 does not refer to "expert" witnesses. Officer Eisentrat is covered by Interrogatory No. 8 regardless of how his testimony is characterized. More importantly, however, we believe the fair and reasonable construction of the interrogatories, the failure to supplement them, and the express pretrial conversation between counsel is that the City represented that it did not intend to use the officer as an opinion witness on causation.

The discovery rules are intended to provide a vehicle by which one party may be fairly apprised of the other's case and be prepared to meet it if he can. *Watts v. Superior Court*, 87 Ariz. 1, 347 P.2d 565 (1959) (the purpose of discovery is to avoid the element of surprise and prevent the trial of a lawsuit from being a "guessing game"). Proper use of discovery also facilitates settlement, *see* 27 C.J.S. Discovery § 20 (1959), makes trials more efficient, *see, e.g., Burke v. Superior Court*, 71 Cal. 2d 276, 78 Cal.Rptr. 481, 455 P.2d 409 (1969), and helps insure that verdicts are based on fact rather than on confusion or surprise. *U–Totem Store v. Walker*, 142 Ariz. 549, 691 P.2d 315 (App.1984).

█ Here, plaintiff's counsel properly used the discovery rules to examine defendant's case. Then, out of an abundance of caution, he confirmed with trial counsel before trial that the officer would not be used as an expert opinion witness on causation. To accept defendant's argument and permit the officer's testimony under the theory that it is only lay opinion testimony on causation would be to exalt form over substance. It would reward those who would provide a hypertechnical reading to the discovery rules, while penalizing those who operate pursuant to the good sense and spirit of the rules.

Nor can we accept the City's alternative argument that non-disclosure was permissible because the plaintiff knew of the officer's opinion. Knowledge that a witness has an opinion is *not* knowledge that your opponent will seek to introduce that opinion at trial. Had *that* fact been disclosed, plaintiff may have conducted pretrial discovery to explore the basis of the opinion, or he may have sought and obtained additional witnesses of his own to refute the opinion. The case of *Bliss v. Treece*, 134 Ariz. 516, 658 P.2d 169 (1983), relied upon by defendant, is easily distinguishable. There the party objecting to the opinion testimony of an investigating officer was the very party who had called the officer to testify. 134 Ariz. at 518, 658 P.2d at 171. On the incomplete record before us in *Bliss*, we held that no error had been shown.[1] Plaintiff here prudently followed the rules. He was entitled to know, before trial, that the City would seek to use its investigating officer as an opinion witness on causation. The trial court should have sustained the objection.

## WAS THE ERROR HARMLESS?

The court of appeals concluded that admission of the officer's opinion, even if erroneous, was harmless because it was not relevant to either party's theory of the case. If it was not relevant, it should not have been received regardless of whether it was lay testimony, opinion testimony of a lay witness, or opinion testimony of an expert witness. The trial court and the parties certainly all treated the evidence as being relevant. We reject the court of appeals' theory of harmless error based on irrelevance.

█ Nor do we believe the error can be labeled harmless on any other ground. This was a one-vehicle accident which resulted in serious injuries. *The* issue in the case, insofar as liability was concerned, was causation. Plaintiff testified to certain facts which, if believed, would lead one to the conclusion that the accident was caused by the City's negligence in marking and maintaining the roadway. On the other hand, the officer's opinion was that plaintiff ran into a curb, strongly suggesting

---

1. We note parenthetically that *Bliss* casts doubt on defendant's argument here that the officer's testimony is not "expert" testimony.

inattentiveness or some other improper driving. Had plaintiff known this testimony was going to be used, he might have been prepared to call a rebutting witness. Besides rebutting plaintiff's factual testimony, the officer's opinion testimony, if believed, also cast doubts on plaintiff's credibility. We have previously had occasion to note that jurors may lend great credence to the testimony of trained, experienced police officers and that the officer's opinion may be a prominent factor in the verdict rendered. *See Bogard G.M.C. & Co. v. Henley,* 92 Ariz. 107, 374 P.2d 660 (1962). This is, of course, exactly why the defendant wants the evidence in. Under the circumstances of this case, we are unable to conclude that the jury would have reached the same verdict without the inadmissible testimony. Therefore, its admission was not harmless. *Groener v. Briehl,* 135 Ariz. 395, 661 P.2d 659 (App.1983); *Harris v. Thompson,* 18 Ariz.App. 154, 500 P.2d 1142 (1972).

## ADMISSIBILITY OF THE OPINION TESTIMONY AT RETRIAL

We have considered whether we should attempt to resolve the question of the admissibility of the opinion testimony at any retrial which may be held. In the interest of fairness to both parties, we conclude that we should not. On appeal, the City has briefed the issue of admissibility primarily on the basis that the testimony is not expert testimony. This argument was designed to avoid the problem of non-disclosure. Because the City will now have an opportunity to cure the non-disclosure problem prior to any retrial, it may well wish to broaden its arguments in support of admissibility. Conversely, if disclosure is made so that plaintiff has the opportunity for pretrial discovery relative to the testimony, plaintiff may be able to advance additional arguments against its admissibility, whether it be considered expert testimony or lay opinion testimony. In short, we anticipate there may well be considerations of admissibility that are not fully developed in the present record. Admissibility of properly disclosed opinion testimony is, in the first instance, a question for the trial court to be

resolved on the theories then present on the record then present. *Groener,* 135 Ariz. at 398, 661 P.2d at 662. Accordingly, we decline to attempt to resolve the issue here and now on a record which was made for a different purpose.

## CONCLUSION

The memorandum decision of the court of appeals is vacated. The trial court's judgment is reversed, and this cause is remanded for a new trial consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.